IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TERI L. GRAHAM,**

    **Plaintiff,**

vs.                                                       **No. CIV 03-1373 RLP/DJS**

**LINCARE, INC., UNUM LIFE
INSURANCE COMPANY OF
AMERICA and UNUM PROVIDENT
LIFE INSURANCE COMPANY OF
AMERICA,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Joint Motion for Protective Order **[Doc. No. 11]**, filed on February 23, 2004.   Plaintiff brought this action against Defendants under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, for denial of death benefits.  The parties do not dispute the Plan is governed by ERISA.  Thus, pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff seeks to enforce her rights under the Plan.  Plaintiff contends she is an intended beneficiary of the Group Life and Accidental Death & Dismemberment Insurance Plan (the Plan) between Lincare, Inc. and UNUM.  Defendants move the Court for a protective order providing that discovery not be allowed in this case.  Plaintiff opposes the motion.  Having considered the arguments, pleadings, relevant law, and being otherwise fully informed, the Court finds that the motion is not well taken and will be DENIED.

## I. Background

Plaintiff began her employment with Lincare, Inc. on August 22, 2000. Compl. ¶ 4. On October 23, 2000, Plaintiff completed and submitted a Group Enrollment form for Lincare Inc.'s insurance carrier, UNUM.[1] Compl. ¶ 5. On April 4, 2001, Plaintiff completed and submitted a Supplemental Term Life Insurance Enrollment form requesting the maximum employee life benefit of $60,000, the maximum spouse benefit of $30,000, and the children benefit of $5,000 per child. Compl. ¶ 6. Because Plaintiff was requesting Supplemental Life Insurance for her husband, on April 9, 2001, Rose Gonzalez, Lincare Inc.'s Benefits Analyst, sent Plaintiff a memo requesting Plaintiff submit additional information concerning her husband's health. Compl. ¶ 7. Plaintiff complied with this request and submitted an Evidence of Insurability on April 27, 2001. Compl. ¶ 8. On May 5, 2001, Plaintiff's husband signed this form. This form was submitted to Lincare, Inc. Compl. ¶ 8. On May 31, 2001, Plaintiff's husband died in a plane wreck. Compl. ¶ 9.

On June 8, 2001, Plaintiff's payroll check reflected a deduction for her dependent coverage insurance premium. Compl. ¶10. Plaintiff's July 20, 2000 paycheck reflected a refund of the June 8, 2001 insurance premium. Compl. ¶10. Lincare, Inc. attempted to reimburse Plaintiff for the June 8th insurance premium arguing the insurance coverage did not begin until June 1, 2001. Lincare, Inc. claimed Plaintiff's husband's insurance coverage did not begin until then because that was when an "open enrollment" period began. Compl. ¶10. Plaintiff refused to sign her payroll check and demanded the insurance premium be deducted. Compl. ¶10. On

---

[1] In her Complaint, Plaintiff collectively referred to Defendants UNUM Life Insurance Company of America and UNUM Provident Life Insurance Company of America as "UNUM."

August, 2001, Lincare, Inc. removed the reimbursement from Plaintiff's payroll check.  Compl. ¶10.

On September 17, 2001, UNUM mailed a brochure of benefits to Plaintiff.  Compl. ¶12. The brochure came from Ayco, L.P., a financial counseling service for covered employees and their families.  On October 15, 2001, UNUM sent Plaintiff another brochure about Ayco's financial counseling services informing her of her status as a beneficiary.  Compl. ¶13.  The cover letter stated: "You have been identified as a beneficiary under a Group Life Insurance policy issued by this company."  Compl. ¶13.  On the same day, Plaintiff received a letter from Courtney M. Poznanski, Administrator of Survivor Support Estate Financial Services.  Compl. ¶14.  Ms. Poznanski informed Plaintiff of her appointment with Andrea Sutton, an attorney who was going to meet with Plaintiff in Truth or Consequences, New Mexico.

On October 22, 2001, Rose Gonzalez mailed a memo dated September 26, 2001, to Plaintiff.  Compl. ¶16.  In this memo, Ms. Gonzalez informed Plaintiff that Lincare, Inc. was only allowed to give up to $20,000 for spouse life insurance unless Plaintiff submitted an Evidence of Insurability.  Plaintiff had until October 19, 2001, to return the Evidence of Insurability form. Compl. ¶16.

On October 22, 2001, Ms. Sutton of Ayco's Dallas office came to Plaintiff's home. Compl. ¶17.  Ms. Sutton informed Plaintiff that she should have already received a payment in the amount of $30,000 or would be receiving it shortly.  Compl. ¶17.

On November 1, 2001, Plaintiff called Ms. Sutton because she had not received the $30,000 payment.  Compl. ¶18.  Ms. Sutton assured Plaintiff she would look into the matter.  On

3

November 6, 2001, Ms. Sutton called Plaintiff to inform her Lincare, Inc. was holding things up. Compl. ¶19.   Ms. Sutton expressed her surprise that Plaintiff had not received the payment.

On November 7, 2001, Plaintiff faxed Ms. Gonzalez a note explaining she had already submitted the Evidence of Insurability and informing her UNUM was waiting for Lincare, Inc. to issue the insurance check.  Compl. ¶ 20.  Ms. Gonzalez informed Plaintiff UNUM had lost the paperwork and now Lincare, Inc. was waiting on UNUM.  Compl. ¶ 21.

On November 7, 2001, Ms. Sutton wrote a twenty-four (24) page letter to Plaintiff detailing a number of issues Plaintiff would face in the wake of her husband's death.  Compl. ¶ 22. In this letter, Ms. Sutton explained about how the insurance proceeds in the amount of $30,000 would be handled.

On November 27, 2001, Plaintiff called Ms. Sutton.  Compl. ¶ 23.  Ms. Sutton informed Plaintiff Lincare, Inc. was not going to pay her.  Plaintiff threaten to file a lawsuit.  Ms. Sutton agreed Plaintiff would prevail if she filed a lawsuit.  Compl. ¶ 23.  On January 20, 2001, Plaintiff received a letter from Ayco informing her Ms. Sutton was no longer employed there and assigning her a new attorney, Michelle Miller Gifford.  Compl. ¶ 24.

On August 12, 2002, Plaintiff received a written denial of claim.  Compl. ¶ 25.  Plaintiff appealed the denial.  Compl. ¶ 26.  On October 18, 2002, UNUM denied benefits.  Compl. ¶ 27. This action followed.

## II.  Standard of Review

The Court must first determine which standard of review applies, arbitrary and capricious or *de novo* review.  Second, if the Court determines that *de novo* review is appropriate in this

case, the Court must then determine if exceptional circumstances exist to warrant the admission of additional evidence.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court set forth the basic framework for determining the standard of review in ERISA cases that challenge the denial or termination of benefits. The Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. If discretionary authority exists, then the proper standard of review is abuse of discretion.[2]  *Id.*

In reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record. *Sandoval v. Aetna Life & Cas. Ins. Co.,* 967 F.2d 377, 380-81 (10th Cir. 1992). However, in reviewing a plan administrator's decision under a *de novo* standard, the Court may "supplement [the administrative record] 'when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision.'" *Hall v. UNUM Life Insurance Company of America*, 300 F.3d 1197, 1202 (10th Cir. 2002)(quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 763, 765 (8th Cir. 1993)).

In *Hall*, the Tenth Circuit considered for the first time the proper evidentiary scope of review in *de novo* ERISA cases. Reasoning that supplementation would preserve the procedural rights employees were entitled to prior to the enactment of ERISA and "help protect employees'

---

[2] The Tenth Circuit treats the terms "arbitrary and capricious" and "abuse of discretion" as interchangeable. *Fought v. UNUM Life Ins. Co. of America*, 357 F.3d 1173, 1181 n. 2 (10th Cir. 2004).

substantive rights in those limited circumstances where extra-record evidence is relevant and necessary," the Tenth Circuit held that district courts could supplement the administrative record in exceptional circumstances in *de novo* ERISA cases.  *Hall,* 300 F.3d at 1202.

In reaching it holding, the Tenth Circuit considered the variety of ERISA cases brought before the federal courts.  The Tenth Circuit noted some of these cases had substantial administrative records while others had very limited records, some of the cases involved plans in which the payor and administrator were one and the same, and some of the cases involved complex issues of medicine, law, and plan interpretation.  *Id.* at 1203.  "Given this diversity," the Tenth Circuit found that "providing the district courts with flexibility to admit additional evidence in limited circumstances is appropriate and even necessary in order to address the varied situations in which the administrative record alone may be insufficient to provide proper de novo review."  *Id.* at 1203.  However, the Tenth Circuit emphasized "that it is the unusual case in which the district court should allow supplementation of the record."  *Id.*  Moreover, "[t]he party seeking to supplement the record bears the burden of establishing why the district court should exercise its discretion to admit particular evidence by showing how that evidence is necessary to the district court's de novo review."  *Id.*

The Tenth Circuit provided the following list of exceptional circumstances that could warrant the admission of additional evidence: (1) claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; (2) the availability of very limited administrative review procedures with little or no evidentiary record; (3) the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; (4) instances where the payor and the administrator are the same entity and the court is concerned

6

about impartiality; (5) claims which would have been insurance contract claims prior to ERISA; and (6) circumstances in which there is additional evidence the claimant could not have presented in the administrative process. *Id.* The Tenth Circuit made clear the list was not exhaustive and that the district court was not required to admit additional evidence when these circumstances existed. *Id.*

To further guide the district courts when considering admitting additional evidence, the Tenth Circuit noted that, in considering a motion to introduce evidence not presented to the plan administrator, the district court will need to address why the evidence proffered was not submitted to the plan administrator and should only admit the additional evidence if the party seeking to introduce it can demonstrate it could not have been submitted to the plan administrator at the time the challenged decision was made. *Id.* "Conversely, '[i]f the administrative proceedings do not allow for or permit the introduction of the evidence, then its admission may be warranted.'" *Id.* (quoting *Quesinberry*, 987 F.2d at 1027). Finally, the Tenth Circuit held that "[c]umulative or repetitive evidence, or evidence that 'is simply better evidence than the claimant mustered for the claim review' should not be admitted." *Id.* (quoting *Quesinberry*, 987 F.2d at 1027).

### III.  Discussion

Defendants filed this motion for protective order seeking to limit discovery to the administrative record. Defendants contend Plaintiff is not entitled to discovery in this case because, under the Plan, UNUM Life Insurance Company of America has discretion to construe the terms of the Plan and determine eligibility for benefits. Thus, Defendants claim the Court must review UNUM Life Insurance Company of America's decision to deny Plaintiff benefits only

7

for abuse of discretion.  Defendants contend that, under this standard of review, the Court is limited to the administrative record, i.e., the materials compiled by the administrator in the course of making the decision to deny benefits.  Accordingly, because Defendants have already provided the administrative record to Plaintiff, Defendants contend discovery is not permitted.

Plaintiff opposes the motion for protective order.  Citing to *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003), Plaintiff contends the Court must apply a *de novo* standard of review.  Plaintiff contends *de novo* review is required in this case because the Plan "required UNUM to notify [her] of its decision within 90 days and, under special circumstances, within 180 days (if it notified claimant of such need) after a claim is filed."  Pl.'s Resp. at 3.  The Plan states: "UNUM will notify you in writing within 90 days after your claim form was filed."  Pl.'s Resp., Ex. A (UNUM Plan).  Additionally, the Plan required UNUM to notify Plaintiff of a its need for an extension of time.  *Id.*  ERISA also requires that "if a claim is wholly or partially denied, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section of the plan's adverse benefit determination within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan . . . ."  29 C.F.R. §2560.503-1(f).

Plaintiff filed her claim for benefits on **July 27, 2001**.  Pl.'s Resp., Ex. B (Notice of Claim).  Because UNUM did not respond to her claim, on **July 9, 2002**, Plaintiff's counsel sent a letter to Lincare, Inc., the Plan Administrator, demanding a response and requesting information and a copy of the current Plan.  Pl.'s Resp., Ex. C (Letter to ERISA Plan Administrator).  On **August 12, 2002**, UNUM Provident denied Plaintiff's claim and informed her of her right to appeal the decision by sending a written request within 90 days from receipt of the denial.  Pl.'s

Resp., Ex. D (Letter from UNUM Provident dated August 12, 2002).  In its August 12, 2002 letter, UNUM Provident denied benefits, stating:

> According to Mr. Graham's death certificate, his date of death was May 31, 2001.  The group life policy issued to Lincare, Inc. had an open enrollment period to elect employee or dependent supplemental life coverage from March 1, 2001 through May 31, 2001.  Mrs. Graham, as an employee of Lincare, Inc., elected supplemental dependent coverage during this open enrollment.  Since the election during this open enrollment was to become effective on June 1, 2001, and since Mr. Graham's date of death was prior to this effective date, his dependent group life coverage never became effective.  Therefore, I regret to inform you that no benefits for this claim are payable.

*Id.*  To support its rationale for denying benefits, UNUM Provident attached to its August 12, 2001 letter an **October 16, 2001** letter addressed to Lincare, Inc. and titled "Pertinent Policy Provisions Regarding Open Enrollment From Policy Issued to Lincare Inc."  *Id.* at pg 3.  This letter concerned UNUM Life Insurance Company of America/Group ID Number 88477001 (Plaintiff's Policy) and, according to UNUM Provident, served to "confirm our willingness to administratively allow an open enrollment period from March 1, 2001 through May 31, 2001." *Id.*

UNUM Provident informed Plaintiff's counsel he could "appeal by sending a written request within 90 days from receipt of this letter to: UNUM Life Insurance Company of America, Group Life Appeals Section."  *Id.* at pg 2.  UNUM Provident also informed Plaintiff's counsel that "[A]n appeal specialist employed by UNUM Life Insurance Company of America will conduct a full and fair review of your claim and its denial.  If we do not receive a written request within 90 days of your receipt of this notice, then our claim decision will be final." *Id.* (emphasis added).  On **August 20, 2002**, UNUM Provident sent a letter to Plaintiff's counsel stating that it was treating his July 9, 2002 letter as an appeal of the August 12, 2002 denial.  Pl.'s Resp., Ex. E

9

(UNUM Provident letter).  Thus, it is evident that UNUM Provident did not comply with the Plan's terms.

Plaintiff also contends Defendants failed to comply with ERISA regulations requiring a claim denial to make "reference to the specific plan provisions on which the determination is based."  29 C.F.R. § 2560.503-1(g)(ii).  According to Plaintiff, in its denial letter, UNUM Provident cited the agreement with Lincare, Inc. to support its decision.  However, Plaintiff contends the agreement in question was reached "ten months after the Plan went into effect, six months after [Plaintiff] enrolled for dependent care coverage, and three months after she filed her claim."  Pl.'s Resp. at 4.

Defendants do not dispute they failed to adhere to the limits imposed upon the administrator's discretionary authority by the Plan and ERISA regulations.  However, Defendants claim *Gilbertson* does not require a *de novo* review of Plaintiff's claim because it was not "deemed denied" since UNUM **expressly** denied her claim.  Defs.' Reply to Pl.' Resp. at 3.  Defendants argue that only when the plan administrator issues <u>no decision</u> is it considered a "deemed denied" case.

The issue presented in *Gilbertson* was "whether a plan administrator with discretionary authority whose delay in deciding a claim results in it being "deemed denied" is entitled to judicial deference."  328 F.3d at 631.  In *Gilbertson*, Plaintiff worked for Defendant AlliedSignal as an Administrative Support Coordinator since 1992.  In March 1998, Plaintiff was diagnosed with fibromyalgia.  Plaintiff took short-term disability leave which lasted through September 30, 1998.  On that day, AlliedSignal terminated her employment.  Plaintiff promptly applied for long-term disability benefits under AlliedSignal's Salaried Employees Pension Plan (the Plan), a plan covered

10

by ERISA. The Plan named AlliedSignal as the Plan Administrator and provided it with discretionary authority to administer the Plan, interpret its terms, and delegate its authority to third parties. AlliedSignal hired Life Insurance Company of North America (LINA) to administer the Plan and to determine eligibility for benefits.

On December 9, 1998, LINA denied Plaintiff's application for long-term disability benefits and listed the grounds for denial. The denial letter also notified Plaintiff of her right to request a review of the denial, encouraged her to submit additional information promptly, and informed her LINA would issue a final decision within 60 days of receiving her request for review or, 120 day, if LINA specified it required additional time due to special circumstance. This language complied with a provision in the Plan requiring the administrator to make a final decision within the applicable 60- or 120-day deadline. In turn, this language tracked 29 C.F.R. § 2560.503-1(h), an ERISA regulation that sets forth the applicable deadline and further provides that claims not decided within the deadline are "deemed denied."

LINA received Plaintiff's request for review on January 14, 1999. On January 28, LINA responded and informed Plaintiff she would be notified of a final decision within 60 days of receipt of her request for review. LINA took no action on the claim until early May. At that time, LINA referred the file to its medical consultant for review. The medical consultant recommended Plaintiff undergo an independent medical examination (IME). LINA did not inform Plaintiff or her attorney of this recommendation. On June 1, 1999, Plaintiff's attorney sent a letter to LINA seeking information regarding Plaintiff's claim. Specifically, the attorney inquired as to whether LINA would accept or reject Plaintiff's claim. LINA did not inform Plaintiff or her attorney that it had decided to request an IME. On August 20, 1999, HealthSouth, the institution

11

LINA hired to perform the IME, sent Plaintiff a certified letter informing her she was scheduled for her IME on September 9, 1999. Plaintiff canceled the IME appointment. Treating her claim as having been "deemed denied" pursuant to ERISA regulations, Plaintiff sought judicial review and argued that the proper standard of review was the *de novo* standard. Defendants LINA and AlliedSignal moved for summary judgment, arguing that LINA's denial of benefits was entitled to judicial deference under the arbitrary and capricious standard. The district court acknowledged that LINA had failed to meet the ERISA deadline, nevertheless, it applied the deferential standard of review and granted LINA's motion for summary judgment.

On appeal, the Tenth Circuit reversed the district court. Relying on *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Tenth Circuit held that "when substantial violations of ERISA deadlines result in the claim's being automatically denied on review, the district court must review the denial *de novo*, even if the plan administrator has discretionary authority to decide claims." *Gilbertson,* 328 F.3d at 631. The Tenth Circuit opined that the ruling in *Firestone* required this holding. The Tenth Circuit reasoned,

> [T]o be entitled to deferential review, not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion. It follows that where the plan and applicable regulations place temporal limits on the administrator's discretion and the administrator fails to render a final decision **within those limits**, the administrator's 'deemed denied' decision is by operation of law rather than the exercise of discretion, and thus falls outside the *Firestone* exception. When the administrator fails to exercise his discretion **within the required timeframe**, the reviewing court must apply *Firestone's* default *de novo* standard.

*Id.* (emphasis added). The Tenth Circuit also cited, with approval, to *Jebian v. Hewlett Packard Company*, 310 F.3d 1173 (9th Cir. 2002).[3] *Jebian* involved a plan administrator's denial of an

---

[3] Opinion withdrawn and superceded by *Jebian v. Hewlett Packard Company Employee Benefits Organization Income Protection Plan*, 349 F.3d 1173 (9th Cir. 2003)(The Ninth Circuit

12

employee's claim for long term disability benefits after the claim had already been "deemed denied" under the terms of the plan and applicable ERISA regulations. The district court reviewed the denial under the arbitrary and capricious standard because the plan vested the administrator with discretionary authority. Relying on *Firestone*, the Ninth Circuit reversed.

"According to *Jebian, Firestone* affords deferential review only to discretionary decisions that conform to the limits placed upon the administrator's discretionary authority by the plan and ERISA regulations." *Gilbertson*, 633 F.3d at 632 (citing *Jebian*, 310 F.3d. at 117-78)(emphasis added). Accordingly, "'decisions made outside the boundaries of conferred discretion are not exercises of discretion' and are not entitled to deferential review." *Id.* (quoting *Jebian*, 301 F.3d at 1178)(emphasis added); *see also, Torres v. Pittston Company*, 346 F.3d 1324 (11th Cir. 2003)("The Labor Department has taken the position that a denial occurring without the minimum procedural safeguards provided in the ERISA statutes and regulations should not be reviewed deferentially." (citing to 63 Fed.Reg. 48,390, 48, 397 (Sept. 9, 1998)(formerly codified at 29 C.F.R. pt. 2560) & 65 Fed.Reg. 70246, 70255 (Nov. 21, 2000)(codified at 29 C.F.R. pt. 2560)).

In this case, there is no dispute that Defendants failed to adhere to the limits imposed upon the administrator's discretionary authority by the Plan and ERISA regulations. Nonetheless, Defendants argue they are entitled to deferential review because "UNUM expressly denied" Plaintiff's claim. However, applying *Gilbertson* to the facts of this case, Defendants' argument fails. Although UNM may have expressly denied Plaintiff's claim, that decision was clearly made

---

nonetheless held that when a plan fails to meet the deadline for issuing a decision on the plaintiff's request for review, and there is no evidence that the plan administrator was engaged in a good faith attempt to comply with the deadline when it lapsed, de novo review should be applied.)

"outside the boundaries of [its] conferred discretion" and is therefore "not entitled to deferential review." *Gilbertson*, 633 F.3d at 632. Accordingly, the Court finds that *de novo* review applies in this case.

The Court further finds that exceptional circumstances exist to warrant the admission of additional evidence. Starting in July, 2001, when Plaintiff refused to sign her payroll check and demanded that Lincare, Inc. remove the reimbursement of the June 8th insurance premium from her check, through November, 2001, when Ms. Sutton finally informed her that Lincare, Inc. was not going to pay her, Plaintiff was led to believe that she would be receiving benefits. Ayco was under the same impression. In fact, on October 15, 2001, UNUM informed Plaintiff she had been identified as a beneficiary. UNUM later reversed its position and denied benefits. Plaintiff seeks the admission of certain evidence arguing the evidence is necessary to the Court's *de novo* review.

First, Plaintiff claims that, although Lincare, Inc. (the Plan Administrator) was substantially involved in denying her claim for benefits, it has not produced any documents. Thus, Plaintiff contends it would be proper to require Lincare, Inc. to provide discovery so the Court could determine Lincare, Inc.'s role in the claims process and whether it breached any fiduciary duty to Plaintiff. Second, Plaintiff contends that UNUM Provident has denied in its Answer that "it insured or administered claims for Graham's life insurance," yet it is mentioned several times in UNUM's file as taking an active and lead role in denying the claim. Plaintiff also contends it was UNUM Provident and Lincare, Inc.'s false flyer that Defendants rely upon for their assertion that coverage did not begin until June 1, 2001. According to Plaintiff, this flyer falsely announced that "[e]ffective June 01, 2001, your new Supplemental Life Insurance carrier will be UNUM Provident." Pl.'s Resp. at 8. However, coverage never shifted for Plaintiff and her insurer

14

remained UNUM Life Insurance Company of America, which would have provided coverage on May 1, 2001. Plaintiff requests discovery from UNUM Provident to uncover its role in the claims process. Plaintiff also claims Defendants have failed to produce documents explaining Ayco's agency relationship with UNUM. Plaintiff has met its burden of establishing why the Court should allow supplementation of the record. Based on Plaintiff's claims regarding deficiencies in the administrative record, the Court finds that in reviewing the benefit decision in this case, the Court may need additional evidence to conduct an adequate *de novo* review. The Court will set a hearing at a later date to address exactly what limited discovery it will allow.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that Defendants' Joint Motion for Protective Order [Doc. No. 11] filed on February 23, 2004, is hereby DENIED.

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**